MARGARET NICHOLS, d. b. a., *v.* NICHOLAS H. VINSON, p. b. r.

*Construction of Statutes—Husband and Wife—Witness—Contract—Evidence.*

Under the statute in this State a husband is a competent witness in a civil action in which the wife is a party to the suit; and this applies to an action brought before the passage of said statute but tried subsequently thereto.

Where a party receives the benefit of a service rendered by another the law establishes an implied contract upon which the latter may recover in an action of assumpsit what he proves the services to be reasonably worth.

A wife may give her own personal property to her husband or may sell it to him and receive payment therefor.

An account book made up of items jotted down upon a slate during the day and subsequently transferred to said book is a book of original entry.

*(Kent, October, 1891.)*

APPEAL from Justice of the Peace.
Heard before Comegys, C. J., and Grubb and Cullen, J. J.

*John B. Pennington,* for the appellant, produced as a witness Ellis Nichols, the husband of the appellant.

*C. H. B. Day,* for the respondent, objected to the competency of this witness, for the reason, as he contended, that the recent act of the General Assembly allowing a husband and wife to testify in civil actions to which either or both are or may be parties, applied only to cases originating after the passage of said act: that as this suit was brought originally under the old law and by the power and authority given by that law, the old law would be the one under which the case would be tried. Therefore as the present statute applied not to suits brought under the old law but only to such as were brought after the passage of the new act, the husband could not testify in this case.

THE COURT, COMEGYS, C. J. We will admit the testimony,

subject to the charge of the Court, in which the questions raised will be passed upon.

CULLEN, J., charging the jury :

*Gentlemen of the Jury :* This is an action at the suit of Margaret Nichols (defendant below) appellant, against Nicholas H. Vinson (plaintiff below) respondent. The action was originally brought below before a justice of the peace by Nicholas H. Vinson against Margaret Nichols; judgment there was recovered on the suit by Mr. Vinson, and the defendant, Mrs. Nichols, takes an appeal. The case then comes up to this court to be tried " de novo," —that is, just as though no action whatever had been instituted in the court below. This action, gentlemen, is a very common one,— what is called an action of assumpsit, in this case brought for the recovery of the price of work and labor done by Mr. Vinson for Mrs. Nichols (or some one else) in the sawing of certain timber— 10,928 feet at the price of 50 cts. per hundred. There is no dispute about this service being rendered by Mr. Vinson in the sawing of this lumber, neither is there any dispute as far as the evidence that you have heard in this case is concerned as to the price; in other words, it is admitted on both sides that the service was rendered by Mr. Vinson in the sawing of certain timber at 50 cts. per hundred, which would amount—less a credit of $1.52 —to the sum of $53.12.

In all actions of this kind (assumpsit) there may be a recovery had where there is a special contract; that is, an agreement in which a person agrees to do certain service for a fixed and stated sum. If there was such a contract, and the party seeks to recover, he must prove that it is a special contract. If, however, he has no special contract, but the service is rendered, and the party receives the benefit of the service rendered by the other, then the law establishes an implied contract on which he is entitled to recover what he proves the services are reasonably worth. We, therefore, say to you, gentlemen, that if these services were rendered, then, of course,

Mr. Vinson has a right to recover, provided the work was done at the request of the party for whom he alleges the service was rendered.

So far as the Act of Limitations is concerned, it does not apply in this case; for if the suit be brought within three years on account, then the person can recover. At the end of three years the account is barred and recovery could not be had, except upon proof of the judgment.

There is very little law in this case; it is mostly a matter of fact—I might say, entirely a matter which is to be decided by you according to the evidence which you have heard in this case. So far as the evidence is concerned, the court have nothing whatever to do with that. It is your duty to sift the evidence, reconcile it if you can, and ascertain what are the true facts that have been proved on the witness stand in this case.

There is a question which, however, the court held up for advisement; we admitted the testimony of the husband, the wife being a partner, but we had some doubt whether under the recent act of the General Assembly the common law had been so far changed as to allow this; but we conclude that the facts are sufficient to allow the husband to be a witness in this case. The recent law, which is in direct conflict with the common law, provides "That it shall and may be lawful for husband and wife to testify in all civil actions in which either or both are or may be parties to the suit." That is, the law makes the husband and wife competent as witnesses, and the weight of their testimony is to be considered by you like any other testimony which may be offered.

In the first place here it appears, as alleged on the part of the plaintiff in this case (Mr. Vinson) that Mr. Nichols, the husband of Mrs. Nichols, is an insolvent man. That is admitted on both sides. They have also proved here to you that he has not been in the habit of doing business in his own name for some years back. According to the testimony of Mr. Nicholas H. Vincent, plaintiff in this case it appears that Mr. Nichols called upon him, as he

alleges, stating that he did not do any business for himself, and that he wanted him to saw a quantity of timber which was to be gotten off his wife's land. Something had been said here in relation to this timber not being sawed according to contract—so far as that is concerned, we may presume—and you have a right to presume—that if the work was not done in a workmanlike manner, the party was not liable to accept it. It has been proved to you, and admitted on the other side, that Mr. Vinson sawed this timber, that it was sent away and sold in the city of Wilmington. Therefore the case stands before you that Mr. Vinson has done this work, consisting of cutting into board or timber of whatever kind was ordered, 10,928 feet at 50 cents per hundred; and Mr. Vinson alleges in this case that he has not been paid for this labor, and that he charged for the cutting of this timber, not Mr. Nichols, who came to see him, but Mrs. Nichols. It is very true that Mr. and Mrs. Nichols are husband and wife, and it would be necessary, in order that the wife shall be charged, that this matter should be brought home to the knowledge of the wife that certain work had been done at her request and for her benefit. It will be necessary for you to be satisfied that it was done through and by her agent, and that he acted on behalf of her. And as Vinson's statement goes, he says that Mr. Nichols came to him to saw this lumber saying that he did not do business in his own name, and that the timber was cut off his wife's land, and now you are to put your own construction upon this. What did he mean by this statement; did he mean, "Well, I have nothing to do with this matter, as the timber comes off my wife's land and I do no business myself;" or did he mean to convey the idea, "I am going to get some timber off my wife's land and bring it here and have it sawed for my own benefit?"—that is a matter for you to take into consideration. He made no contract and did not say whether it was for one party or the other. It is alleged on the other hand, and contended by the wife, who is the defendant, that she never employed Mr. Vinson either directly or indirectly, either by or through herself or by

or through her husband as her agent, but on the contrary that she sold this timber to her husband at his request. Of course, the wife has a right to hand over property to her husband just as she has a right to hand it over to anybody else, or she may sell it and take the money—that is an executed contract by taking the money and handing over the property. Her testimony is that she had no connection with this agreement as between Mr. Nichols and Mr. Vinson; that Mr. Nichols bought this lumber of her at so much and that he paid her a certain price. This is the conflicting testimony as between the two parties, and that is a matter which you must reconcile; and you must do it by taking into consideration all the facts and circumstances surrounding it, in order to ascertain what position the parties occupy to the case. One may be actuated by interest and the other may have no interest in the matter at all.

Then, again, Mr. Nichols testified to the same facts that were testified to by his wife. She alleges that this lumber was sold to her husband at $2.00 per tree, the same price for which she sold timber to a man by the name of Hairgrove, that she made a special bargain with Mr. Hairgrove herself, that her husband refused to have anything at all to do with it, as she states that she desired her husband to transact business for her and that he positively declined and that she sold this timber to Mr. Hairgrove. Mr. Hairgrove comes up here, on the contrary, and testifies—and you must consider it—that he never bought any timber from this lady and was not acquainted with her, but might know her if he should see her, but that his agreement was made by and through the husband, who went with him into the woods and selected the trees, and that he paid the husband not far from Hairgrove's mill yard at the rate of $2.00 per tree, the former getting out of the carriage and receiving the money, and leaving in the carriage a lady whom the latter did not know.

Another portion of testimony produced here is that of the husband and wife that they never went together for the purpose of seeing Mr. Vinson, in order to make an arrangement with him for

sawing this timber. It was alleged on the other side that they drove up to the house and went to see Mr. Vinson and he was not at home. The witness Ford testifies to you that on a certain occasion in corn-husking time Mr. Nichols came along the road with a horse and carriage and his wife with him in the carriage, that he stopped the carriage along a hedge row, the witness was husking corn some 20 corn rows from the hedge, that he distinctly saw the carriage and knew the horse to be that of Mr. Nichols. They drove up to the mill of Mr. Vinson and came back; that Mr. Nichols said to witness that he had been with his wife to see Mr. Vinson (and wanted to know where he was) to saw some timber for his wife. That is a direct conflict of testimony, and it is for you to take into consideration.

So it presents itself, after all, as a case in which work was done—that is not denied—but it is contended on one side that the work was done at the instance of the husband alone, and on the other hand the plaintiff claims that it was done and charged by him at the time against the wife, as he knew that the husband was insolvent.

In relation to the account, we would say to you, gentlemen, that a man may keep an account in a book for service rendered, he may come into court and produce that book, and, if fairly and regularly kept, under the provisions of the statute, that is sufficient to prove the work was done. But that is not absolutely necessary, as a person may recover for work and service rendered, though he has no account at all, but he is driven to other proof—that is, to prove that the work was done and labor rendered for which he charges. The book of Mr. Vinson, I understand, was not presented as a book of account upon which he sought to recover, but certain work was therein entered, viz., sawing done for Mrs. Margaret Nichols on the 15th day of November, 1886; and the book was used, as is always usual in cases of that kind, to refresh his memory, and was not offered in evidence. This account was kept on a slate and afterwards transferred to the book. That is allowed under the

present statute, and the book into which it is entered is considered a book of original entry. A blacksmith, for instance, sets down items during the day on a slate with a pencil and at night he transfers it to his book; although the law provides that an account to stand must be an original entry, on account of the convenience of this method, it is settled that parties may put items on a slate and then put them in a book, and this book is called a book of original entry. In this case, inasmuch as the service was proved by Mr. Vinson, independent of the book, it amounts to the same thing as if he had kept his account regularly.

If you shall be satisfied from the proof, taking into consideration all the circumstances, that Mr. Nichols went to Mr. Vinson himself, and that Mr. Vinson did not charge Mrs. Nichols but that he charged Mr. Nichols, by reason of the fact that he told him that he was going to dispose of this lumber some way, then in that case Mrs. Nichols is not bound to pay this bill. But if you are satisfied that Mr. Nichols went there to Mr. Vinson and that he was acting on behalf of his wife, and if his wife was cognizant of this fact, or he represented it to Mr. Vinson so that the latter made the charge against his wife, then in that case the wife is liable.

Verdict for $68.62 for plaintiff below.